**RED BULL ASSOCIATES, Gordon Weiss and Murray Weiss, Plaintiffs–Appellees,**

v.

**BEST WESTERN INTERNATIONAL, INC., Defendant–Appellant.**

**No. 336, Docket 88–7600.**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1988.

Decided Nov. 29, 1988.

Lewis M. Steel, New York City, Steel Bellman & Levine, P.C. (Miriam F. Clark, New York City, with him on the brief), for plaintiffs-appellees.

Franz S. Leichter, New York City, Walter, Conston, Alexander & Green, for defendant-appellant.

Before KAUFMAN, OAKES, NEWMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This case presents the issue whether a contractual forum selection clause should prevail when the district court found that enforcing the clause would hamper more important imperatives of the forum in which suit was brought. Because we believe the decision to transfer a case where there is a contractual choice-of-forum provision and significant public policy concerns

at issue is best left to the sound discretion of the trial judge, we affirm.

## I.

Best Western International, Inc. ("Best Western") appeals from a judgment of the United States District Court for the Southern District of New York, denying its motion to transfer the action to the District of Arizona pursuant to a forum selection clause and 28 U.S.C. § 1404(a).[1]

Appellee, Red Bull Associates ("Red Bull"), is a limited partnership which owns and operates the Red Bull Motor Inn, a motel in Poughkeepsie, New York. Appellees, Gordon and Murral Weiss, are general partners in Red Bull; they supervise the daily activities of the Inn.

Under an affiliation agreement between appellee's and Best Western, an Arizona non-profit corporation, Red Bull secured use of the Best Western name, logo, emblems, and registered marks, all of which command considerable "good will" in the motel industry. Since 1985, this annually renewed agreement has included a forum selection clause stipulating that any dispute arising out of the contract could be brought only in an Arizona court.[2] The contract also allowed the appellant to monitor maintenance and housekeeping standards in each member motel by biannual inspections. Failure to receive a passing score resulted in the property being placed on probation and reinspected in 90 days. A second failing score was a ground for termination of the affiliation.

After two unsatisfactory examinations in 1986, Best Western's Inspector Byrne placed the Inn on probation. Byrne scrutinized the Inn a third time giving it a pass-

1. Best Western also moved to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(3). Since neither Best Western nor Red Bull advance arguments concerning Judge Knapp's decision to deny that motion, we do not address the merits of that determination here.

2. The forum selection clause reads:
"Unless waived by Best Western in whole or in part, the Courts located in the State of Arizona, state or Federal, shall have exclusive jurisdiction to hear and determine all claims, disputes and actions arising from or relating to this application and agreement or to any relationship between the parties hereto and venue shall be in the courts located in Maricopa County, Arizona. Applicant expressly consents and submits to the jurisdiction of said courts and to venue being in Maricopa County, Arizona."

ing score. Red Bull was then removed from probationary status.

Several months later, however, Inspector Hammond evaluated the Inn, and despite a refurbishing program during the intervening period, Red Bull received a failing score. While conducting his examination, Hammond allegedly stated that a group of black women and children on the grounds "looked terrible" and uttered other disparaging remarks. At a second inspection, Hammond again allegedly observed that the appearance created by certain minority families on the property and by their children playing in the parking lot was "terrible." He further commented that they lived like animals.

The subject of these remarks were homeless families living at the Inn under a contract between Red Bull and the Westchester, New York Department of Social Services. By the terms of that agreement, Red Bull provided 35 of its 145 rooms on a long-term basis as temporary shelter for the homeless. Approximately 80% of those housed by the program were black or Hispanic.[3]

On November 24, 1987, Best Western terminated Red Bull's membership, purportedly due to the failure of the Inn to pass the required inspections. The appellee, however, asserted that the termination was due to racial bias and sought an injunction, alleging that the appellant violated the Civil Rights Acts of 1867, 1964, and 1968. 42 U.S.C. §§ 1981–1982 (Civil

Rights); *id.* § 2000a–1, *et seq.* (Public Accommodations); *id.* § 3601, *et seq.* (Fair Housing). Despite the forum selection clause, Red Bull brought the action in the Southern District of New York. Best Western moved to transfer the litigation to the District of Arizona pursuant to the forum selection clause and 28 U.S.C. § 1404(a).

Judge Knapp denied the transfer motion, relying on *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). After noting that Red Bull had "submitted evidence in the form of both documents and affidavits to support their charge of racial bias," he applied the public policy exception to the general rule enunciated in *Bremen* upholding forum selection clauses. *Red Bull Assoc. v. Best Western Int'l. Inc.*, 686 F.Supp. 447 (S.D.N.Y.1988). He granted Best Western's petition for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) by order dated June 3, 1988.

## II.

We note as a preliminary matter that this appeal was properly certified to us under 28 U.S.C. § 1292(b).[4] The district court rightly determined that the application of *Bremen* in the context of a civil rights action constituted a controlling question of law and that the other requisites for § 1292(b) certification were also met in this case.[5] Nevertheless, Judge Knapp's ultimate resolution of the question whether

---

**3.** In addition to the alleged discriminatory remarks of Inspector Hammond, there was evidence that, in making the decision to end Best Western's affiliation with Red Bull, the Best Western Board of Directors considered supplementary reports authored by Hammond focusing on the Social Service families. Best Western also refused to exclude the rooms for the homeless from its biannual inspections although the rooms were not under the daily control of Red Bull and no room service was provided. Best Western had agreed to an exemption in a previous contract between the International Business Machines Corporation and the Inn involving a similar long-term rental to IBM employees.

**4.** *See A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 442 (2d Cir.1966). Some commentators have questioned whether § 1404(a) transfer motions are properly appealable under

§ 1292(b). *See* C. Wright, Law of Federal Courts § 102, at 463 (2d ed. 1970); *but see* 9 Moore's Federal Practice ¶ 110.13[6] (2d ed. 1973). As a general matter, review of a judge's § 1404(a) determination is disfavored. *See Olinick*, 365 F.2d at 439. Where, however, it is urged that the court considered improper factors in making its decision to transfer, review via § 1292(b) is appropriate. *Id.* at 443. In this case, Best Western alleged that the district court improperly considered as a factor the potential inhibitory effect on the enforcement of civil rights laws if a transfer were granted.

**5.** In addition to requiring that the certified issue be a controlling question of law, § 1292(b) also demands that the issue offer "substantial ground for difference of opinion" as to its correctness, and, if immediately appealed, "materially advance the ultimate termination of the litigation."

this action should be transferred requires further comment because of an intervening change in the law.

### III.

Judge Knapp assumed *Bremen* to be his lodestar in assessing the validity of forum selection clauses in the civil rights context. *Bremen* was an admiralty case in which the Supreme Court considered the weight accorded a choice-of-forum provision in an international towage contract. The court held that such a clause is *prima facie* valid unless the party challenging it clearly shows that "enforcement would be unreasonable and unjust." *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

■ The Supreme Court has since decided *Stewart Organization, Inc. v. Ricoh Corp.,* —— U.S. ——, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), in which it concluded that, outside the admiralty realm, § 1404(a) transfer motions are not governed by the standard articulated in *Bremen* but by the terms of § 1404(a) itself. Consequently, the question now before us is whether the district court examined the appropriate factors under § 1404(a) in denying Best Western's motion to transfer. Appellant contends that Judge Knapp abused his discretion by improperly considering the potential inhibitory effect on the enforcement of civil rights laws if a transfer were granted. This argument fails because pursuant to *Bremen,* forum selection clauses may be avoided upon a showing that enforcement "would contravene a strong public policy of the forum." *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916. Red Bull invoked federal Fair Housing, Public Accommodations, and Civil Rights laws. After an analysis of the legislative history of these statutes, Judge Knapp concluded:

> 28 U.S.C. § 1292(b). A substantial ground for a difference of opinion existed as to whether a judge might properly deny a § 1404(a) transfer motion on the ground that the Congress favored determination of civil rights cases in a forum convenient to the plaintiff. Indeed, that very issue is the substantive question we address below. The third requirement of the § 1404(a) test is also met since Judge Knapp found that if the action were transferred to Arizona, appellees would not pursue their case. *Red Bull,* 686 F.Supp. at 448. A reversal of Judge Knapp's

Congress' basic purpose in incorporating the concept of the private attorney general into the civil rights laws was to encourage litigation of civil rights claims. That public policy would obviously be hindered by enforcing a contract which would prevent or seriously discourage the pursuit of such litigation.

*Red Bull v. Best Western,* 686 F.Supp. 447, 452 (S.D.N.Y.1988).

Judge Knapp thus properly noted a clear statutory declaration that civil rights actions such as Red Bull's were to be encouraged.[6]

Appellees also adduced evidence sufficient to persuade the district court of their role as "private attorneys general" carrying out important community civil rights imperatives by maintaining this litigation. *See Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–02, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Judge Knapp was satisfied that if the action were transferred, Red Bull would be unable or unwilling to pursue it. He thus determined that Red Bull met its burden as set forth in *Bremen* "that trial in the contractual forum will be so gravely difficult and inconvenient that [the party seeking to avoid the clause] will for all practical purposes be deprived of his day in court." *Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917.

In the Supreme Court's intervening decision in *Stewart,* a dealership agreement obligated an Alabama corporation to market the copier products of Ricoh, a national manufacturer with its principal place of business in New Jersey. The contract stipulated that all disputes were to be brought only in Manhattan. Stewart Organization sued Ricoh for breach of contract in the Northern District of Alabama, on the basis

denial of appellant's motion would thus immediately end the litigation.

**6.** Best Western misconstrues the conclusion that venue should remain in the Southern District of New York so that appellees may maintain their suit as suggesting either that a jury in a federal district court other than the one where the alleged violation occurred is less competent than a "local" jury or that the public policy of encouraging civil rights suits differs among federal districts.

of diversity jurisdiction. That court denied Ricoh's § 1404(a) motion to transfer the case to the Southern District of New York, on the ground that Alabama law, which looks unfavorably on contractual choice-of-forum provisions, controlled. On appeal, the Eleventh Circuit, sitting *en banc*, applied *Bremen* and reversed the district court.

The Supreme Court affirmed this ruling. Writing for the majority, however, Justice Marshall declared that a district court sitting in diversity is to apply § 1404(a), itself, in deciding what effect to give a forum selection clause. *Stewart*, 108 S.Ct. at 2242–43. While the Court did not overrule *Bremen*, it noted that, as an admiralty case, that opinion did not necessarily control the decision of a district court sitting in diversity jurisdiction. *Id.* at 2243.

■ Under 28 U.S.C. § 1404(a), a transfer may be ordered "[f]or the convenience of parties and witnesses, [or] in the interest of justice...." Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 108 S.Ct. at 2244 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). In applying the factors enunciated in *Bremen*, Judge Knapp considered the forum selection clause, the convenience of the parties in light of their provision for an Arizona venue, the public policy implications of Red Bull's acting as a "private attorney general" enforcing the Fair Housing laws,[7] and the strength of the evidence of discrimination. He correctly followed a strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society and concluded that implementation of the forum selection clause would frustrate that purpose. The fact that he conducted his analysis before *Stewart* was filed is not significant.[8]

■ While individuals are free to regulate their purely private disputes by means

of contractual choice of forum, we cannot adopt a *per se* rule that gives these private arrangements dispositive effect where the civil rights laws are concerned. Congress declared two factors decisive on a motion for transfer pursuant to § 1404(a). The private convenience of the parties (which favors Red Bull) was only one of the elements to be considered. The other component of the analysis—the interest of justice—is not properly within the power of private individuals to control. The existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions.

Post the Supreme Court's pronouncement in *Stewart*, it is clear that a district court has even broader discretion to decide transfer motions under § 1404(a) than was provided by *Bremen*. Since we believe the district court did not abuse its discretion in refusing to transfer even under the relatively strict confines of *Bremen*, its decision was *a fortiori*, not an abuse of discretion under *Stewart* and was clearly "authorized by law" under § 1404(a). *See Olinick*, 365 F.2d at 443. We affirm.

---

7. *See Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211, 93 S.Ct. 364, 367–68, 34 L.Ed. 2d 415 (1972).

8. Unlike *Stewart*, the instant case is in federal court on federal question grounds. But, we discern no distinction between diversity and federal question cases for purposes of § 1404(a).