Bernard **WALKER** & Christina **Adams**, Plaintiffs,

v.

**CARNIVAL CRUISE LINES**; Carnival Corporation; Unique Travel Agency; Andre's Travel Agency, Defendants.

No. C 98–2926 TEH.

United States District Court, N.D. California.

Feb. 10, 2000.

John L. Burris, Law Offices of John L. Burris, Oakland, CA, Paul L. Rein, Timothy S. Thimesch, Law Offices of Paul L. Rein, Oakland, CA, for plaintiff.

Wayne F. Emard, Markus W. McMillin, Kaye, Rose & Partners, San Francisco, CA, Cynthia L. Mitchell, Norman J. Ronneberg, Jr., Booth Banning LLP, San Francisco, CA, Roger F. Allen, Oakland, CA, for defendant.

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION; DENYING DEFENDANTS' MOTION TO DISMISS

HENDERSON, District Judge.

This is a suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and California Civil Code section 54.1. Two disabled plaintiffs allege that defendants, Carnival Corporation and Carnival Cruise Lines, collectively "Carnival", failed to provide accessible accommodations on a cruise ship. Presently before the Court is plaintiffs' motion to reconsider that portion of our August 3, 1999, Order dismissing Carnival as defendants pursuant to an exclusive forum selection clause on plaintiffs' tickets. The Court heard oral arguments on September 27, 1999, and is thoroughly briefed on these matters. For the reasons articulated below, the Court HEREBY GRANTS plaintiffs' motion to reconsider our Order of dismissal and, having reconsidered, DENIES defendants' motion to dismiss plaintiffs' claims against Carnival.

## I. FACTUAL & PROCEDURAL BACKGROUND

According to the complaint, plaintiff Christina Adams suffers from "severe chronic-progressive Multiple Sclerosis." She relies upon a wheelchair for her mobility and is bowel and bladder incontinent. Plaintiff Bernard Walker is a quadriplegic with limited muscle control who also suffers from incontinence. Both have meager financial means due to their disabilities. Defendants Carnival Corporation and Carnival Cruise Lines, collectively "Carnival", are Panama corporations with their principal place of business in Florida. Plaintiffs each took separate 3–4 day trips on *the Holiday,* a cruise vessel owned and operated by Carnival, which departs from Los Angeles. Walker made arrangements for his honeymoon cruise with his new wife and family through Unique Travel, prior to his departure on July 28, 1997. He received his tickets through his neighbor, an employee with Unique Travel, within a week of his departure. Unique Travel was informed that Walker was disabled, used a wheelchair, and would require a disabled accessible guest room, as well as disabled accessible facilities, on *the Holiday.* Despite receiving assurances from Unique Travel and direct assurances from Carnival that his room and the ship were dis-

abled accessible, Walker discovered that neither his room nor the ship were so equipped. After two years of saving, Mrs. Adams selected the shortest and least expensive cruise available to celebrate a previous wedding anniversary. (Decl. C. Adams at ¶ 10). Adams booked her passage on *the Holiday* with Andre's Travel Agency. She received her tickets 10 days before her departure on September 12, 1997, and was assured by her travel agent that her room and the ship were disabled accessible. Both plaintiffs allege suffering indignities, injuries, and a wholly disapproving voyage due to the ship's inaccessibility. Plaintiffs subsequently filed this suit alleging that Carnival violated the Americans with Disabilities Act of 1990, 42 U.S.C. section 12101, and California Civil Code section 54.1

██ On November 6, 1998, Carnival moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b), in light of a forum selection clause on each plaintiff's ticket designating Florida as the exclusive forum for actions against Carnival.[1] The Court construed defendants' motion to dismiss as one for improper venue under F.R.C.P. 12(b)(3).[2] *See Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996) (motions to dismiss premised upon the enforcement of a forum selection clause are properly treated as motions to dismiss for improper venue). After reviewing the evidence, the Court determined that the forum selection clause had been "reasonably communicated" to plaintiffs and was therefore, enforceable. The Court determined that plaintiffs had failed to meet the "heavy burden of proof," required to set aside a

forum selection clause and on August 3, 1999, issued an Order dismissing, without prejudice, plaintiffs' claims against Carnival.

Plaintiffs erroneously moved for a new trial under Federal Rules of Civil Procedure 59(a) and 59(e), misinterpreting the Court's August 3, 1999, Order dismissing plaintiffs' claims against Carnival as a final judgment. Accordingly, on August 24, 1999, this Court vacated plaintiffs' motions for a new trial. Plaintiffs filed an expedited motion for leave to file a motion for reconsideration of the Court's August 24th Order. In the interest of judicial economy, this Court amended the same Order, *sua sponte*, treating plaintiffs' motion for a new trial as a motion for reconsideration of the Court's August 3, 1999, Order dismissing Carnival.

## II. LEGAL STANDARD

### A. MOTION TO RECONSIDER

Under Federal Rule of Civil Procedure 54(b), this Court has discretion to revise its orders prior to entry of final judgment: "[A]ny order which ... adjudicates fewer than all the claims or rights or liabilities of fewer than all the parties ... is subject to revision at any time before the entry of [final] judgment." FED.R.CIV.P. 54(b). However, Rule 54(b) does not provide a mechanism by which parties may seek reconsideration. Local Rule 7-9(A), of the Northern District of California fills this procedural gap but requires that a party first obtain leave of the district court before filing a motion to reconsider. *See* CIVIL L.R. 7-9(A).[3]

1. Carnival also moved, in the alternative, to have the case transferred pursuant to 28 U.S.C. section 1404(a). However, this motion was denied as procedurally defective. Additionally, plaintiffs' original cause of action under California Health & Safety Code section 19955 was dismissed without opposition.

2. Accordingly, the Court did not assume the truth of the pleadings and considered facts not contained therein. *Id.* Federal law governs the validity of a forum selection clause,

*id.*, and where a maritime contract is involved, its interpretation is governed by the general maritime law of the United States. *See The Moses Taylor,* 71 U.S. (4 Wall.) 411, 18 L.Ed. 397 (1866); *Kendall v. American Hawaii Cruises,* 704 F.Supp. 1010, 1018 (D.Haw.1989).

3. This Court implicitly granted plaintiffs leave to file a motion for reconsideration through its *sua sponte* recasting of plaintiffs' expedited motion. CIVIL L.R. 7-9(a).

 To prevail upon a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *See e.g., Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987), *cert. den'd,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). The Local Rules of the Northern District of California set forth three circumstances under which a Motion to Reconsider may be granted: 1) the existence of "a material difference in fact or law" from that presented to the court at the time of the hearing that could not have been reasonably known to the party seeking reconsideration; 2) the emergence of new material facts or a change of law occurring after the order; or 3) "[a] manifest failure by the court to consider material facts" presented to the court at the hearing. Rule 7–9(b)(1)–(3). *See generally,* CALIFORNIA PRACTICE GUIDE FEDERAL CIVIL PROCEDURE BEFORE TRIAL. however, "[n]o motion ... for reconsideration shall repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." CIVIL L.R. 7–9(c). Finally, a motion for reconsideration is to be decided within the sound discretion of the district court and such decision is reviewed for an abuse of discretion. *See* CIVIL L.R. 7–9 and 7–10; *Hinton v. Pacific,* 5 F.3d 391 (9th Cir.1993) (motion for reconsideration).

## III. DISCUSSION

### A. RECONSIDERATION IS WARRANTED

For these reasons, the Court HEREBY GRANTS plaintiffs' motion to reconsider its decision to enforce the forum selection clause and now will reconsider the merits of Carnival's motion to dismiss.

In the Court's Order dated August 3, 1999, this Court performed a detailed analysis of the forum selection clause borne by plaintiffs' tickets in light of *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (hereafter *"Carnival"*). The Court concluded that plaintiffs' other arguments notwithstanding, the forum selection clause had been "reasonably communicated" to both Walker and Adams and was therefore valid and enforceable. That analysis remains unchanged. Accordingly, that portion of our previous order is reaffirmed and will not be reported here.

We do conclude, however, that the forum selection clause should not be enforced on other grounds that the Court failed to fully or adequately consider. Those grounds are: first, the fact that plaintiffs' physical disabilities and economic constraints are so severe that, in combination, they would preclude plaintiffs from having their day in court and, second, the fact that plaintiffs are seeking to vindicate important civil rights. We now turn our attention to these two grounds.

### B. PLAINTIFFS' PUBLIC POLICY ARGUMENTS

 Plaintiffs contend that even if the forum selection clause borne by their tickets is valid and enforceable, public policy considerations militate in favor of this Court declining to enforce this clause and retaining jurisdiction over this action. Specifically, plaintiffs argue that their physical and financial inability to travel to Florida, combined with the strong national interest in promoting civil rights under the ADA, requires the action to proceed in this forum. Defendants argue that plaintiffs' physical and financial hardships are "irrelevant" and that according to *Carnival,* Carnival's selection clause is not "fundamentally unfair." (Def.Repl. at 4). We first consider whether plaintiffs' public policy exception arguments are meritorious in light of the strong judicial preference for enforcing forum selection clauses.

### 1. Discretionary Non–Enforcement of Valid Forum Selection Clauses

The forum selection clause has undergone a complete about-face in the eyes of

the law—from *prima facie* unenforceable to *prima facie* valid. At earlier points in time, courts were loathe to enforce a forum selection clause. This was based, in part, upon the fiction that such private ordering improperly displaced the sovereign's grant of jurisdiction. In 1972, the Supreme Court put an end to this fiction noting that "[t]he argument that such clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction." *MS Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972).

The *Bremen* Court went on to rule that a forum selection clause should be enforced unless it could be shown that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 17, 92 S.Ct. 1907. Finding that the forum selection clause at issue was the product of fraud or overreaching, the Court held that the clause could not fairly be said to represent the intent of the parties and thus, there could be no valid agreement for the Court to enforce. But the *Bremen* Court also left room for non-enforcement of forum selection clauses where the agreement itself was legally valid but the consequences of enforcement would be "unreasonable or unjust." *Id.* Although, "[t]he [*Bremen* ] Court did not define precisely the circumstances that would make it unreasonable for a court to enforce a forum clause," *Carnival*, 499 U.S. at 591, 111 S.Ct. 1522, it did identify at least two relevant factors: 1) the interests of the parties to the litigation, and 2) the public policy of the forum where suit is brought. *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

As to the first factor, the Court noted that a forum selection clause might be overly burdensome, and thereby unreasonable for one of the parties where "trial in the contractual forum" would be "so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of his day in court." *Id.* at 12, 92 S.Ct. 1907. *See e.g., Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.1984) ("Absent some evi-

dence submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties.").

As to the second factor, the Court explained that it might be unreasonable to enforce an otherwise valid forum selection clause where enforcement would contravene a strong public policy of the forum in which suit is brought. *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. *See e.g., Richards v. Lloyd's of London*, 135 F.3d 1289, 1293 (9th Cir.1998); *Fireman's Fund Ins. Co. v. M.V. DSR ATLANTIC*, 131 F.3d 1336, 1338 (9th Cir.1997). Pursuant to either factor, the Court explained that those opposing enforcement would bear a heavy burden of persuasion. *Carnival,* 499 U.S. at 595, 111 S.Ct. at 1528. Thus, since the Supreme Court first established the judicial presumption favoring the enforcement of forum selection clauses, it has tempered that presumption in light of concerns for justice and fairness.

The Supreme Court's next major consideration of forum selection clauses widened the discretion allowed district courts, in some circumstances, to decline enforcement of an otherwise valid forum selection clause. In *Stewart Organization v. Ricoh*, the Court laid forth the proper analysis for a court considering a 28 U.S.C. section 1404(a) motion to transfer venue for the convenience of the parties based upon an exclusive forum selection clause. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The Court noted that:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to

private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause. . . .

*Id.*

There can be no question that under *Stewart* the enforcement of an otherwise valid exclusive forum selection clause is not axiomatic. While the most recent and analogous consideration of forum selection clauses by the Supreme Court reiterates the general enforceability of forum selection clauses, it also confirms the existence of a peppercorn of judicial discretion to decline enforcement of a forum selection clause—even apart from section 1404(a) transfer of venue considerations.

*Carnival Cruise Lines Inc. v. Shute* presented the Court with an opportunity to elaborate upon and refine its analysis of the enforceability of forum selection clauses in the context of form passenger contracts. *Carnival*, 499 U.S. at 585, 111 S.Ct. at 1522. The *Carnival* Court reemphasized that parties hoping to avoid a forum selection clause bear a "heavy burden." *Id.* at 595, 111 S.Ct. at 1528. Nonetheless, the Court explained that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." *Id.* The Court framed this inquiry in terms of whether there was fraud, overreaching, or some bad faith motive by the party favoring enforcement. However, the Court left open the possibility that the 'extreme inconvenience of the contract forum' exception, carved out in *Bremen,* could warrant non-enforcement. Although the *Carnival* Court rejected the Ninth Circuit's reliance upon that exception, the Court did so based upon the district court's failure to

provide a sufficient factual basis to support a finding that the Shutes were economically incapable of pursuing the litigation in Florida, not upon any categorical rejection of the premise that incapability—financial or otherwise—could amount to fundamental unfairness. *Id.* at 594, 111 S.Ct. at 1528.[4] Moreover, the evaluative standard chosen by the Court, "fundamental fairness," strongly suggests that the Court did not intend to limit the scope of judicial scrutiny merely to the three situations there described. *Id.* at 595, 111 S.Ct. at 1528. While clearly the Court refined the *Bremen*'s analysis to account for the modern realities of form passenger contracts, the *Carnival* and *Bremen* decisions are neither inconsistent, nor mutually exclusive, and courts continue to look to both cases for guidance in this context. *See e.g., Spradlin v. Lear Siegler Management Servs. Co.,* 926 F.2d 865, 867 (9th Cir.1991) (forum selection clause enforced where appellant "failed to produce evidence of inconvenience he would suffer by litigating in Saudi Arabia" or even offer any specific allegations as to his inconvenience); *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.,* 183 F.3d 750, 752 (8th Cir.1999); *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1292 (11th Cir.1998); *Mitsui & Co. v. Mira M/V,* 111 F.3d 33, 35 (5th Cir.1997).

Applying these principles to the facts at hand, it is hard to envision circumstances which, in their totality, more clearly demonstrate the fundamental unfairness of enforcing a forum selection clause. The distance to be traveled by the disabled plaintiffs is substantial, more than three thousand miles between Florida, the designated forum, and the Northern District of California. The average airplane ride from areas lying within the Northern District to Florida is five to six hours and costs on average $490.[5] (Decl.T. Thi-

---

**4.** The Supreme Court explained, "the District Court made no finding regarding the physical and financial impediments to the Shutes' pursuing their case in Florida. The Court of Appeals' conclusory reference to the record provides no basis for this Court to validate the finding of inconvenience." *Shute,* 499 U.S. at 594, 111 S.Ct. at 1528.

**5.** This price assumes a two week advance purchase. A later purchase raises the average price to $1,200 – $1,800. *Id.*

mesch at ¶¶ 2–3). Moreover, airlines servicing the *Miami / Fort* Lauderdale route do not provide disabled accessible restroom facilities. (Decl.T. Thimesch at ¶ 3). By train, the travel time increases to three and a half days each way, and the price along with it to $1,858 per person. (Decl.T. Thimesch at ¶ 4). The automobile is no better, with a modest estimate of travel time between 5–10 days. (Decl.C. Adams at ¶ 7). While others might undertake a journey such as this with relative ease, it is clear from the record before us that the economic and physical impairments of plaintiffs Walker and Adams effectively transforms the designated forum state of Florida into the equivalent of "a remote alien forum." *Bremen,* 407 U.S. at 16, 92 S.Ct. 1907.

As noted initially, plaintiff Christina Adams is wheelchair bound due to severe chronic progressive multiple sclerosis. She is bowel and bladder incontinent and unable to use airplane restrooms due to their narrow configuration. (Decl.C. Adams at ¶ 1). For the last five years Mrs. Adams has been unable to fly on trips more than one hour in length. (Decl.C. Adams at ¶ 4). She attests to having suffered numerous "embarrassing incidents" and unpleasant remarks making the prospect of such travel so "intensely embarrassing and humiliating" that she would prefer to drop her claims against Carnival rather than endure further similar experiences: (Decl.C. Adams at ¶¶ 6–9).[6] For example, Mrs. Adams declares that travelers confined to a passenger cabin with her have made remarks such as, "If ·you can't control yourself, why are you on this airplane?" (Decl.C. Adams at ¶ 5) Other travelers have not hesitated to inform her that the odor of a bowel or urinary accident is offensive and nauseating. *Id.* The embarrassment to Mrs. Adams prompted

by such remarks has been devastating. The Court finds credible Mrs. Adams description of similar problems with other available means of transportation. (Pltf.'s Ex. at 3, ¶¶ 6–9).

For Mr. Walker, long distance travel poses equally challenging hardships. Mr. Walker is a quadriplegic due to a Level c–6/7 impairment of his spine. (Decl.B. Walker at ¶ 1). He too is wheelchair bound with limited bladder and bowel control thus requiring "immediate restroom access at all times." *Id.* For the same reasons as outlined above in reference to Mrs. Adams, Mr. Walker is unable to undergo a five to six hour plane ride, a three and a half day train-ride or a five to ten day car ride. (Decl.B. Walker at ¶¶ 3–6). Mr. Walker has also suffered ridicule and public humiliation due to his incontinence, most recently he alleges, at the hands of passengers on the very Carnival Cruise voyage which forms the underlying basis for this lawsuit. *Id.*

In addition to the physical and personal hardships that would be imposed by enforcement of the forum selection clause, both plaintiffs are of such meager economic means that the cost of travel to Florida would be prohibitively expensive. Nor could either plaintiff provide for themselves while in Florida. Moreover, Christina Adams' and Bernard Walker's impecuniousness is a direct function of their disabilities.[7] Mrs. Adams, her husband, and their two children have "less than $400 in monthly disposable income to allocate towards discretionary items"—one of which is food. (Decl.C. Adams at ¶ 10). Each month, Mr. Walker has less than $700 in disposable income, also not including food costs, to allocate between his family of three. (Decl.B. Walker at ¶¶ 8). As discussed above, even the lowest average

---

**6.** Mrs. Adams explains in her declaration that "[t]he possibility of being subjected to this situation would be more than enough motivation to force me to drop this suit to avoid such misery."

**7.** Mrs. Adams and Mr. Walker explained that they are dependant upon public assistance in the form of Social Security Income, paid on account of their disabilities. (Decl.C. Adams at ¶ 10; Decl.B. Walker at ¶ 8). The majority of these small allotments go towards medical expenses and attendant care. *Id.*

airfare for one round trip is clearly beyond the financial means of these plaintiffs. An order by this Court requiring plaintiffs to pursue theirs suits, if at all, in Florida, would force them to forego basic necessities such as food, or forego any redress for their civil rights. This is a Hobson's choice, and as such, no choice at all.

Defendants argue that financial and physical hardship is irrelevant as shown by the Supreme Court's disregard of plaintiff's financial limitations in *Carnival.* As discussed above, the Supreme Court rejected the Ninth Circuit's holding because it was based upon insufficient findings by the district court. *See Carnival,* 499 U.S. at 594, 111 S.Ct. at 1528. The Court is aware of no *per se* rule announced by the Supreme Court or the Ninth Circuit that financial or physical hardships can never render enforcement of a forum selection clause fundamentally unfair to the plaintiffs in question.

Defendants point to *Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7 (2d Cir.1995), and *Igneri v. Carnival Corp.,* No. 95 CV 2859, 1996 WL 68536 (E.D.N.Y.1996) (unreported disposition), in support of their contention that this Court should disregard the plaintiffs' physical and economic conditions. In *Effron,* the Second Circuit required a 74 year old plaintiff to litigate her personal injury claims against Sun Line Cruises in Greece, pursuant to an exclusive forum selection clause borne by her tickets. The Second Circuit enforced the clause in the face of plaintiff's claims that she would need to hire an attendant to assist her physically, that she could not afford to travel to Greece, was afraid to stay in a strange city where she did not know the language or customs, did not know any Greek lawyers, was ignorant of the Greek legal system, could not afford to hire a Greek interpreter, and could not afford to travel to Greece with all of her witnesses. *Effron,* 857 F.Supp. at 1082. Similarly, in *Igneri,* a district court in New York required a minor to pursue her personal injury action against Carnival in Florida, if at all, despite economic limita-

tions and inconvenience to her witnesses. *Igneri,* 1996 WL 68536 at *1.

There are numerous cases defendants could have cited in addition to those presented here which support the proposition that physical and financial hardships are simply of no consequence to a court's fundamental fairness inquiry. *See e.g., Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 722 (2d Cir.1982) (rejecting plaintiff's claims that the inconvenience and expense associated with traveling from Vermont to Texas would effectively deny him his day in court); *Melnik v. Cunard,* 875 F.Supp. 103, 108 (N.D.N.Y. Nov.4, 1994) (finding unpersuasive plaintiffs claim that transfer of personal injury action would pose financial hardship and emotional hardship to disabled son); *Cooper v. Carnival Cruise Lines, Inc.,* Case No. 91 Civ. 5930, 1992 WL 137012 *2 (S.D.N.Y. June 12, 1992) (case transferred from Southern District of New York to Southern District of Florida despite plaintiff's claims of "various physical and financial hardships"); *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1279 (S.D.N.Y.1992) ("[m]ere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum."); *Talatala v. Nippon Yusen Kaisha, Corp.,* 974 F.Supp. 1321, 1325 (D.Haw.1997) (finding unpersuasive plaintiff's claims that his company could not afford to refinance litigation or find and retain counsel in Japan and enforcing exclusive forum selection clause). However, the cases cited by defendants and unearthed by the Court are distinguishable on two grounds.

First, not one of the plaintiffs in the cases considered above faced the degree, combination, or cumulative effect of severe physical *and* economic disabilities. For example, in *Effron,* although the 74 year old plaintiff alleged that she was partially disabled and could not afford to travel to Greece to pursue her claims, obvious facts underlying the case suggested otherwise. In overturning the district court's decision

not to enforce the forum selection clause, the Second Circuit expressed incredulity at the notion that "someone who owns homes in Palm Beach and New York and who has just returned from an expensive foreign vacation" faces intolerable economic hardship if required to travel to Greece. *Effron*, 67 F.3d at 10. Mr. Walker's and Mrs. Adams's voyages themselves suggest no misrepresentation as to their financial conditions: the Walker's voyage was intended to be their honeymoon celebration, while the Adams, after waiting two years to celebrate a wedding anniversary, selected the most inexpensive trip available. (Decl.C. Adams at ¶ 10; Decl.B. Walker at ¶ 10).

Secondly, all of the suits referred to above were brought by individuals or companies on behalf of themselves only. *See e.g., Bense*, 683 F.2d at 722 (antitrust suit); *Effron*, 857 F.Supp. at 1082 (personal injury action); *Igneri*, 1996 WL 68536 at *1 (personal injury); *Melnik*, 875 F.Supp. at 108 (personal injury); *Cooper*, 1992 WL 137012 at *2 (same); *Talatala*, 974 F.Supp. at 1325 (deterioration of goods).[8] Since plaintiffs in these suits sought redress only for private rights and private interests, courts' interest in enforcing the forum selection clauses at issue did not abut or subvert larger National interests in eradicating discrimination.

■ This Court is persuaded that enforcing defendants' forum selection clause, under the circumstances presented here, would contravene the strong national policy of eradicating disability discrimination and promoting full and equal access to the legal system for civil rights plaintiffs. There can be no question that the Americans With Disabilities Act, passed in 1990, established as law the nation's interest in eradicating the bigotry and barriers faced by individuals with disabilities. 42 U.S.C. § 12102 *et. seq.* (hereafter "ADA"). In

fact, the ADA states its first goal as being "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *See* 42 U.S.C. § 12101(b)(1) (1999). The ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled. 42 U.S.C. § 12101(a)(5). The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of "private attorneys general" who seek to vindicate "a policy 'of the highest priority.'" *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648. *See also Bruce v. City Of Gainesville, Ga.*, 177 F.3d 949, 951 (11th Cir.1999) (discussing ADA plaintiffs as private attorneys general); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 11 (1st Cir.1999);

For example, successful ADA plaintiffs confer a tremendous benefit upon our society at large, in addition to the attainment of redress for their personal individual injuries, successful ADA plaintiffs, like plaintiffs under Title VII, are entitled to 42 U.S.C. section 1988's fee shifting provision. *See* 42 U.S.C. § 1988. As the Eleventh Circuit recently has explained,

> "[i]n Title VII cases as well as cases under the ADA, the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law. Such a policy ensures an incentive for 'impecunious' plaintiffs who can ill afford to litigate their claims against defendants with more resources . . . ."

---

**8.** Although *Weiss*, rejected a similar public policy argument based upon an Age Discrimination in Employment suit, the *Weiss* court specifically found that under the circumstances, any benefits accruing to the public at

large were too ephemeral, and that plaintiff was not likely to discontinue his suit if forced to pursue it in the designated forum. *Weiss*, 801 F.Supp. at 1280.

*Bruce v. City Of Gainesville, Ga.,* 177 F.3d 949, 951 (11th Cir.1999) (citing *Fogerty v. Fantasy Inc.,* 510 U.S. 517, 524, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) as "declining to apply Christiansburg to cases under the Copyright Act because unlike the civil rights context, both the plaintiffs and defendants can 'run the gamut from corporate behemoths to starving artists.' ").

Because the promotion of equal treatment and equal access is a value of paramount importance, it is appropriate for courts to use a more piercing scrutiny when considering the enforcement of a forum selection clause in a civil rights law suit. This Court is not the first to follow such a proposition.

In *Red Bull Assoc. v. Best Western, Inc.,* plaintiff Red Bull hotel chain asserted that the Best Western Inc. had canceled its affiliation with the chain based upon the race of many of Red Bull's tenants. *Red Bull Assoc. v. Best Western, Inc.,* 686 F.Supp. 447 (S.D.N.Y. May 17, 1988), *aff'd* 862 F.2d 963, 967 (2d Cir. 1988). The district court refused to enforce an otherwise valid, exclusive forum selection clause and transfer the case to Arizona based in large part upon the "plaintiffs' role as 'private attorneys general' carrying out important community civil rights imperatives." *Red Bull,* 862 F.2d at 965. The Second Circuit affirmed the district court's refusal to enforce the clause as it would frustrate enforcement of a civil rights statute, specifically Title VII. The Second Circuit explained that

"[the district court] correctly followed a strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society and concluded that implementation of the forum selection clause would frustrate that purpose. While individuals are free to regulate their purely private disputes by means of contractual choice of forum, we cannot adopt a per se rule that gives these private arrangements dispositive effect where the civil rights laws are concerned ... [t]he existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions.

*Red Bull,* 862 F.2d at 967. *See also Nelson v. Master Lease Corporation,* 759 F.Supp. 1397, 1398 (D.Minn.1991) (declining to enforce forum selection clause pursuant to 1404(a) in Title VII sex discrimination case based upon national interest in eradicating sex discrimination); *Gonzalez v. Electronic Control Systems, Inc.,* No. CIV. 93–3107, 1993 WL 372217 *7 (E.D.Pa. Sept.17, 1993) (unpublished disposition) (declining to transfer civil rights care under 1404(a) based in part on plaintiff's financial condition). *But cf. P and J.G. Enterprises, Inc. v. Best Western International,* 845 F.Supp. 84, 90 (N.D.N.Y. 1994) (enforcing the same forum selection clause declined in *Red Bull,* because, unlike *Red Bull,* case did not involve the civil rights laws and policies which are of vital importance to the country").

Although, *Red Bull* was decided before *Carnival* and in the context of a section 1404(a) motion to transfer, its reasoning remains instructive: the subversion or frustration of America's goal of eliminating discrimination raises properly cognizable public policy concerns. In fact, under extraordinary circumstances such as those facing plaintiffs Walker and Adams, a court would be remiss in failing to consider the public policy consequences of its decision to enforce a selection clause.

As discussed above, nothing in the Supreme Court's *Carnival* decision suggests that public policy concerns such as those here articulated are factors inappropriate for inclusion in this Court's fundamental fairness calculus. Since Mrs. Shute was not asserting civil rights claims, the national interest in promoting and protecting the civil rights laws simply had no place in the Supreme Court's equation. Hence, this Court considers enforcement of the selection clause at issue in a different context with different competing interests

than did the Supreme Court in *Carnival Cruise*. In *Carnival*, the Court articulated several economics based public policy concerns that justified presumptive enforcement of non-negotiated forum selection clauses in standard form tickets:

> First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum [selection] clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.
> *Id.* at 593–94, 111 S.Ct. at 1527 (internal citations omitted).

The value of the economic savings garnered through the forum selection clauses are not fungible with the value society places upon eradicating discrimination and ensuring civil rights plaintiffs bringing good faith suits have their day in Court. The reduction in fares that comes as a result of the predictability forum selection clauses generate is not a commensurate analogue easily weighted against the interests at stake in good faith civil rights' actions. Justice Brennan clearly articulated this principle noting that

> "Congress intended for 'private citizens ... to be able to assert their civil rights' and for 'those who violate the Nation's

fundamental laws' not to be able 'to proceed with impunity.' Accordingly, civil rights plaintiffs 'appear before the court cloaked in a mantle of public interest'; to promote the 'vigorous enforcement of modern civil rights legislation,' Congress has directed that such 'private attorneys general' shall not 'be deterred from bringing good faith actions to vindicate the fundamental rights here involved.'" *Marek v. Chesny*, 473 U.S. 1, 31, 105 S.Ct. 3012, 87 L.Ed.2d 1, (1985) (Brennan, J., dissenting).

The economic rationale underlying presumptive enforcement of forum selection clauses in *Carnival* does not justify denying Mrs. Adams and Mr. Walker the opportunity to seek redress on behalf of themselves and, as private attorneys general, on behalf of similarly situated disabled persons, for alleged violation of their civil rights.[9]

Enforcing the forum selection clause here would actually serve to undermine society's strong interest in rooting out discrimination and ensuring that the disabled members of our society may equally partake in social intercourse, because to do so would erode a clearly enunciated federal policy of the highest order. It would be perverse to enforce this forum selection clause where, as a result, plaintiffs effectively would be prohibited from seeking redress, as a direct consequence of the very disabilities that give rise to this suit. *See e.g., Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir.1996) (discussing effective preclusion of disabled individuals based upon their disability pursuant to facially neutral regulation). Strict interpretation and blind enforcement of the forum selection clause here at issue would do nothing less than *re-victimize* these plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that enforcement of the forum selec-

---

9. Based on this same rationale, the Court does not find that the pendency of similar ADA claims by different plaintiffs about different vessels in the Southern District of Florida outweighs the individual and national interests here articulated. (Def.'s Amend.Mo.Dis. at 1).

tion clause here at issue would be fundamentally unfair to these plaintiffs as enforcement would deprive them of their day in court due to their physical and economic disabilities. Moreover, enforcement, under these circumstances, would contravene the strong national policy underlying the ADA, that as private attorneys general, civil rights plaintiffs should not be deterred from bringing good faith claims to vindicate their rights. Venue is proper and will lie in the Northern District of California.

ACCORDINGLY and GOOD CAUSE APPEARING, defendants' motion to dismiss is HEREBY DENIED.

IT IS SO ORDERED.