**Paula SMITH, Plaintiff,**

v.

**COMMODORE CRUISE LINE LIMITED, John Doe, ABC Insurance, and the S.S. Enchanted Seas, in rem Defendants.**

**No. 98 Civ. 0897(JES).**

United States District Court, S.D. New York.

Sept. 29, 2000.

De Gravelles, Palmintier & Holthaus, L.L.P., Baton Rouge, LA (Michael C. Palmintier, of counsel), Sherman & Basichas, L.L.C., New York City (Hillary H. Hughes, of counsel), for Plaintiff.

Healy & Baillie, L.L.P., New York City (John G. Ingram, Julie Pateman Ward, Thomas J. Wagner, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, Senior District Judge.

Plaintiff Paula Smith ("plaintiff") brings this action pursuant to the general maritime law against defendant Commodore Cruise Line Limited ("defendant" or "Commodore") for injuries suffered just prior to boarding defendant's cruise line while it was moored in Montego Bay, Jamaica. Defendant moves for summary judgment on the grounds that plaintiff's claim was brought and served in an untimely manner. For the reasons that follow, defendant's motion for summary judgment is denied.

## BACKGROUND

On July 31, 1993, with a ticket purchased by her daughter, plaintiff departed from New Orleans, Louisiana, on a seven-day cruise on the S.S. Enchanted Seas ("Enchanted"), a cruise line operated by defendant. *See* Amended Memorandum of Law in Opposition to Motion for Summary Judgment dated February 16, 1999 ("Pl. Mem.") at 2. On or about August 4, 1993, while the ship was docked in Jamaica, plaintiff slipped and fell on the bathroom floor of a boarding facility being used by the Enchanted, fracturing her hip and knee. *See* Pl. Mem., Exhibit ("Exh.") A., Copy of Medical Service Bill dated August 4, 1993, at 1. She was subsequently treated for injuries on board the ship, where a ship doctor gave her a shot and placed a cast on her leg. *See id.*

At the time of her treatment, plaintiff asked for a copy of her medical report, but was apparently told by workers for defendant that she needed to write to Commodore to obtain such documents. *See* Pl. Mem., Exh. 1, Letter from Paula Smith to Commodore Cruise Line ("Plaintiff's Letter"), at 1. Shortly thereafter, on August 9, 1993, plaintiff wrote to defendant describing her accident and treatment and requested "a copy of everything for [her] file." *See id.* Her letter noted that the bathroom floor she slipped on "was covered with water" and that "[t]here was no sign on the door saying 'out of order'." *See id.* She further noted that she "would like to collect for [her] bills, etc." *See id.* When she received no response, plaintiff wrote again to defendant on October 24, 1993 requesting her file, but again received no response. *See* Pl. Mem., Exh. 2, Letter from Paula Smith to Commodore Cruise Line dated October 24, 1993 ("Plaintiff's Second Letter"), at 1.

The ticket used by plaintiff contained a passage contract ("the Passage Contract" or "the Contract") that contained provisions relevant to this lawsuit regarding the statute of limitations and forum selection for litigation pursuant to the Passage Contract. *See* Defendant's Notice of Motion for Summary Judgment ("Def.Notice"), Exh. 1C, Passage Contract at 1. In particular, a boxed-off warning in red print on the lower right hand side of page three of the Passage Contract provided that "[e]ach passenger should carefully examine all of the conditions of this contract, particularly the provisions on pages 4–12." *Id.* One such provision referenced by this warning

was located on page eleven of the Passage Contract and provided in part that "[s]uit to recover on any claim against the Carrier and/or vessel shall not be maintainable unless ... [s]uit is initiated within one (1) year from the date when death or injury occurred in respect of any claim for loss of life or bodily injury." *Id.* at 11, § 21(b)(1). Another provision referenced by the warning was located on page ten of the Passage Contract and provided that "[t]he carrier ... shall not be liable for any claim whatsoever of the Passenger ... unless written notice thereof with full particulars shall be delivered to the Carrier or its agent ... [w]ithin six (6) months from the day when the death or injury occurred." *Id.* at 10, § 21(a)(1). Finally, a provision on page twelve provided that

> "The passenger and carrier agree that all disputes and matters arising under, in connection with or incidental to the Contract shall be litigated, if at all before a court located in the State, City, and County of New York to the exclusion of the courts of any other country, state, city or county."

*See id.* at 12, § 27. On August 4, 1994, exactly one year from the date of her injury, plaintiff filed her original complaint in this action in the Civil District Court for the Parish of Orleans, a Louisiana state court. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.Mem.") dated November 6, 1998 at 3–4; Def. Notice, Exh. 2, Petition for Damages dated August 4, 1993 ("Petition"), at 1. The action was filed pursuant to the General Maritime Law of the United States and brought under the "sav-

ing to suitors" clause of 28 U.S.C. § 1333, a statute which gives state and federal courts concurrent jurisdiction over personal maritime claims. *See* Petition at ¶ 2. Rather than serving defendant with process, plaintiff requested that the Louisiana State Court hold service of process.[1] *See* Petition at 3, ¶ 10.

Approximately sixteen months later, on December 15, 1995, plaintiff requested that the Clerk of Court for the Parish of Orleans perfect service of process and provided an address for such service. *See* Service Letter at 1. On both January 12, 1996 and February 12, 1996, service by certified mail upon defendant's agent for service, Stephen D. Field, was attempted in Miramar, Florida, and in each case such letters were returned with notations that Mr. Field had moved with no forwarding address. *See* Pl. Mem., Exh. C, D, Certified Mail Envelopes postmarked January 12, 1996 and February 12, 1996. According to Mr. Field, his office was temporarily located in Miramar from September 1, 1994 until March 1, 1995, but he never received corporate mail at this address and his mailing address was in fact at 800 Douglas Road in Coral Gables, Florida, an address he claims was on file with the Florida Department of State.[2] *See* Supplemental Affidavit of Stephen D. Field in Further Support of Defendant's Motion for Summary Judgment dated March 5, 1999 ("Field Supp. Aff.") at ¶ 3. According to plaintiffs, they then again contacted the Florida Secretary of State in the summer of 1997 and were at this time given a new, correct address for Mr. Field. *See* Pl.

---

1. The procedures and significance of "holding service of process" under Louisiana law are *not entirely clear, although it appears that in* the normal course, service is effected by a sheriff at the direction of the Clerk of Court with whom the action has been filed. *See* La. Civ.Code Civ. Proc. Ann. art. 1292 (West 2000). Accordingly, as in this case, the Clerk is asked to hold service until notified by plaintiff that service should be effected. *See* Def. Notice, Exh. 3, Letter from Michael C. Palmintier dated December 15, 1995 ("Service Letter"), at 1 (requesting that the Clerk of

Court perfect service and providing address for such service).

2. A "Corporate Detail Record Screen" apparently produced by the Florida Department of State on November 7, 1995, however, does list Mr. Field as Registered Agent for Commodore with his address at the Miramar address on that date. *See* Pl. Mem., Exh. E, Corporate Detail Record Screen dated November 7, 1995 ("Corporate Record"), at 1.

Mem. at 6.[3] He was subsequently served with process at this new address on September 19, 1997.[4] *See* Def. Mem. at 4.

Following service of process, defendant removed this action to the United States District Court for the Eastern District of Louisiana and filed a motion to dismiss for improper venue. Judge Henry A. Mentz of that Court transferred the action to this Court pursuant to 28 U.S.C. § 1406, finding that notice of the Passage Contract's forum selection clause could be imputed to plaintiff and that no other reason precluded the Court from enforcing such clause. *See Smith v. Doe,* 991 F.Supp. 781, 782 n. 1, 784 (E.D.La.1998).

## DISCUSSION

On a motion for summary judgment, a moving party is entitled to a judgment as a matter of law where a Court finds that there is no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, all the evidence considered by the Court must be viewed in the "light most favorable to ... the nonmoving party." *LaBounty v. Coughlin,* 137 F.3d 68, 71 (2d Cir.1998).

*Statute of Limitations*

■ Federal admiralty law provides that "a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the case of action accrued." 46 App.U.S.C. § 763a (West 2000). This limitation period may be reduced by contract between the parties, so long as any such limitations period allows passengers to sue at least one year from the date of injury.[5] *See* 46 App.U.S.C. § 183b(a). Moreover, in suits to enforce rights under a federal statute, the limitations period is tolled by the filing of a complaint pursuant to Rule 3 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Proc. 3 (providing that "[a] civil action is commenced by filing a complaint with the court"); *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

Here, a one year limitation period governs as this provision in the Passage Contract was reasonably communicated to plaintiff by boxed-off red print on the Contract's third page referencing the provision. *See Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 46 (2d Cir.1990) (holding that a one-year statute of limitations is valid if referenced by boxed-off red print on page five of a boarding ticket); *see also Smith,* 991 F.Supp. at 784. Defendant does not dispute that plaintiff filed her initial complaint in this action prior to the expiration of this limitations period, and under federal law, the limitations was tolled as of that

---

3. In November of 1995, Commodore notified the Florida Division of Corporations that it had moved its corporate and registered agent's address to Hollywood, Florida. *See* Field Supp. Aff. at ¶ 4; Def. Notice, Exh. 1(B), Letter from Stephen D. Field to Ms. Thelma Lewis dated March 2, 1995 at 1. While defendant's request regarding the change to the company's Registered Agent's address was not entirely clear, defendant argues that even if the State's records did not reflect this correct address, an inquiry to the corporate office would have · ensured that such Agent would have been properly served. *See* Field Supp. Aff. at ¶¶ 5–6.

4. Until April 1995, the Enchanted was moored in New Orleans approximately once every seven days, but plaintiff apparently decided not to seize the vessel and obtain quasi-in-rem jurisdiction on the ground that it was too expensive and that the Louisiana state provision for service of process afforded them five years before their claim would be considered abandoned. *See* Pl. Mem. at 6; La.Code Civ. Proc. Ann. art. 561(A)(1) (1997).

5. Federal and state courts exercising jurisdiction under the "saving to suitors" clause are obligated to apply governing federal substantive law, including the uniform rules for statute of limitations in maritime personal injury actions. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Mink v. Genmar Indus., Inc.,* 29 F.3d 1543, 1547–48 (1994); *Butler v. American Trawler Co.,* 887 F.2d 20, 22 (1st Cir.1989).

date of filing. *See* Fed. R. Civ. Proc. 3; *Ragan,* 337 U.S. at 533, 69 S.Ct. 1233. As such, plaintiff has met the applicable statute of limitations and her complaint may not be dismissed on this ground.

■ Defendant argues further, however, that dismissal is warranted due to an allegedly unreasonable delay in service of process. Under Rule 4(m) of the Federal Rules of Civil Procedure, if service is not made within 120 days after filing of the complaint, the Court "shall dismiss the action without prejudice . . . or direct that service be effected within a specified time." Fed. R. Civ. Proc. 4(m). This rule further provides that the Court may extend the time for service for good cause, with the relevant advisory note suggesting that such extensions may be granted "even if there is no good cause shown" in order to avoid a statute of limitations bar in a refiled action. *See id.; see also Henderson v. U.S.,* 517 U.S. 654, 661, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (noting in dictum that the rules provide district courts with the discretion to enlarge the 120–day period "even if there is no good cause shown").

Here, plaintiff has demonstrated cause for extending the period for service given that the Florida Department of State provided it with an incorrect address for defendant's registered agent. *See* Corporate Record at 1. Moreover, to the extent that plaintiff waited to effect service beyond the 120–day limit under the Federal Rules, such delay was eminently reasonable given that this action was originally filed in Louisiana State Court, and plaintiff believed in good faith that it need not serve process under Louisiana state rules for up to five years. *See* La. Civ.Code Ann. art. 3462 (2000); La.Code Civ. Proc. Ann. art. 561(A)(1997); *Kachelmyer v. Ames,* 335 So.2d 525, 528 (1976). Finally, even if

such circumstances do not constitute cause, this Court would be inclined to exercise its discretion to allow for late service in order to avoid a newly refiled action being barred by the statute of limitations. *See* Fed. R. Civ. Proc. 4(m), Adv. Comm. Note; *Henderson,* 517 U.S. at 661, 116 S.Ct. 1638.

■ As the parties note, however, this analysis regarding service of process becomes somewhat more complicated because this action was originally filed in Louisiana state court, and such court may have been entitled to apply its own procedural rules regarding the timeliness of service.[6] This Court finds, however, that Louisiana state law governing service in the instant action is in fact more generous than the analogous federal rules discussed above, and accordingly plaintiff's action would not be dismissed in that forum for untimely service assuming Louisiana rules apply.

Under Louisiana law,

[p]rescription is interrupted when the owner commences an action against the possessor, or when the obligee commences an action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.

La. Civ.Code Ann. art. 3462 (2000). Moreover, an action in Louisiana is only considered abandoned "when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years." La.Code Civ. Proc. Ann. art. 561(A)(1)(1997). Assuming a plaintiff files her action in a court of proper venue, such provisions when taken together have been interpreted by Louisiana courts to allow plaintiff, without penalty, to toll the limita-

---

**6.** Pursuant to the "saving to suitor" clause, 28 U.S.C. § 1333, federal and state courts have concurrent jurisdiction over maritime tort actions that are not *in rem,* and state courts are allowed to use their own procedural rules

insofar as they do not have substantive implications or have not been pre-empted by the federal maritime law. *See Offshore Logistics,* 477 U.S. at 222, 106 S.Ct. 2485; *Butler,* 887 F.2d at 22.

tions period by simply filing suit and then serving process within five years after such filing.[7] *See Kachelmyer*, 335 So.2d at 528. Here, there is no dispute that plaintiff filed its action within the one year limitations period and thereafter served defendants prior to the expiration of the five year period for abandonment of its action. Thus, to the extent that plaintiff filed her action in a court of proper venue as required by the statute above, she has met the requirements for timely service under Louisiana state law.

█ Defendant argues, however, that the forum selection clause in the Passage Contract mandated that suit be brought in New York, rendering plaintiff's choice of venue in Louisiana improper. *See* Passage Contract at § 27. Accordingly, plaintiff would be subject to the more strict provisions of the statute above, requiring that service be perfected prior to the expiration of the one-year statute of limitations. As such, plaintiff's case would be properly dismissed under Louisiana law because it is clear she failed to serve within such limitations period.

This Court finds however, that venue was properly brought in Louisiana, and plaintiff is accordingly entitled to Louisiana's five year grace period for service of process.[8] In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the Supreme Court suggested that, so long as the forum in which suit was brought met the statutory prerequisites for venue, an enforceable forum-selection clause requiring venue to be brought elsewhere did not render venue in the original forum improper. *See id.* at 29 n. 8, 108 S.Ct. 2239 (noting that "[t]he parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a), because respondent apparently does business in the Northern District of Alabama. *See* 28 U.S.C. § 1391(c) (venue proper in judicial district in which corporation does business)"). Similarly, here, defendants do not dispute that, as a corporation, they have sufficient contacts with Louisiana to render venue proper under the general venue statute, 28 U.S.C. § 1391(c), and, accordingly, this Court finds that venue was properly brought in Louisiana. *See* Transcript of Oral Argument dated July 16, 1999 at 4. Under Louisiana law, therefore, plaintiff was entitled to the benefit of a five year period for service of process, a time period which she did not exceed.[9]

---

7. This generous period for abandonment was shortened to three years in 1997, after the commencement of this suit. *See* La.Code Civ. Proc. Ann art. 561(A) (2000).

8. To the extent that Louisiana state law governs questions related to the propriety of venue, the Louisiana State Supreme Court has ruled that "courts of [that] state sitting in admiralty should examine the validity and enforceability of forum selection clauses in accordance with federal law and standards." *Lejano v. K.S. Bandak*, 705 So.2d 158, 166 (1997), *cert. denied.*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998).

9. While defendant relies heavily upon the opinion of *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), to support its claim that venue was not proper in Louisiana, this decision simply demonstrates the Supreme Court's preference for enforcing forum-selection clauses in passage contracts absent some indication of bad faith, fraud or lack of notice.

*See id.* at 595, 111 S.Ct. 1522. Unlike the *Stewart* Court, the *Shute* Court did not address whether an initial venue was improper because a different contractual forum was agreed upon, nor did it discuss the statutory vehicle by which any requested transfer of venue should take place. In turn, this Court concludes that, when taken together, *Stewart* and *Shute* require transfer for forum *non conveniens* pursuant to 28 U.S.C. § 1404(a) when venue was proper in the initial forum pursuant to the general venue statute even if the parties contractually agree on a different forum. *See Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 915 (E.D.N.Y.1994) (noting that "[t]he fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract, which will be enforced unless fundamentally unfair") (citations and quotations omitted).

Although Judge Mentz transferred this action pursuant to 28 U.S.C. § 1406, it is clear that Judge Mentz's intention was to see this action litigated in this forum and not dis-

Finally, while defendant argues that plaintiff's failure to serve process in a timely fashion violates its due process rights, it provides no support for the proposition that the "policy of repose" generally protected by a statute of limitations or timely service implicates due process concerns. In any event, the policy of repose "is frequently outweighed ... where the interests of justice require." *See Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *Order of Railroad Telegraphers v. Railway Exp Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 88 L.Ed. 788 (1944). As such, given the unclear facts surrounding defendant's ability to be served at an address on file with the Florida Secretary of State and plaintiff's belief that it had five years to serve under Louisiana law, this Court is not inclined to dismiss this action on such grounds.

*Notice of Claim Provision*

■ Defendant further argues that plaintiff failed to meet the notice of claim requirement in the Passage Contract, precluding its claim for recovery in this action. As noted above, the Passage Contract provided that "[t]he carrier ... shall not be liable for any claim whatsoever of the passenger ... unless written notice thereof with full particulars shall be delivered to the Carrier or its agent ... [w]ithin six (6) months from the day when the death or injury occurred." Passage Contract at 10, § 21(a)(1). Failure to comply with a notice of claim provision is fatal to recovery unless, *inter alia*, "the owner or master of the vessel or his agent had knowledge of the injury, damage, or loss and the court determines that the owner has not been

prejudiced by the failure to give such notice." *See* 46 U.S.C.App. § 183b(b)(1).

Here, while defendant received no formal notice of claim, defendant had clear and ample notice that a claim was likely to have been brought against it for the severe injuries suffered by plaintiff. On August 9, 1993, shortly after the incident, and well within the six month period for a notice of claim, plaintiff wrote to defendant describing her accident and treatment in full and requested "a copy of everything for [her] file." Plaintiff's Letter·at 1. She also explicitly stated that the bathroom floor she slipped on "was covered with water," that "[t]here was no sign on the door saying 'out of order'," and that she "would like to collect for [her] bills." *Id.* After receiving no response, on October 24, 1993, a period also well within the six month period for notice of her claim, she again wrote to defendant requesting her file, referencing her original letter and asking that "papers be rush[ed]" to her. *See* Plaintiff's Second Letter at 1. She again received no response. *See id.*

Plaintiff's recitation of facts surrounding the accident suggested in no uncertain terms that defendant had been negligent in failing to alert her that excessive amounts of water were on a bathroom floor under its control. Such communications are more than sufficient to have put defendant on notice that a claim by plaintiff was likely to have been forthcoming, particularly in light of the fact that plaintiff was treated by defendant's agent, a ship doctor, for her injuries whose knowledge can be imputed to defendant. Accordingly, this Court finds that plaintiff issued a timely notice of claim and is not barred from pursuing this action on that basis.[10]

missed on procedural grounds. *See Time Products, PLC v. J. Tiras Classic Handbags & Imports*, No. 93 Civ. 7856(RWS), 1997 WL 139525, at *2 (S.D.N.Y. March 26, 1997). The Court will therefore treat the transfer as made pursuant to 28 U.S.C. § 1404(a).

10. As the Court finds that plaintiff was timely in issuing her notice of claim, it need not address whether plaintiff meets the exception

to such issuance outlined above which is based upon defendant's notice of the accident and a lack of prejudice from not receiving notice of the claim. In any event, however, it is clear under such exception that defendant was on notice of plaintiff's injury because of plaintiff's treatment by defendant's own physician, and that any prejudice is in part due to defendant's failure to both keep records re-

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is denied. The parties are directed to appear for a Pre–Trial Conference on October 23, 2000 at 3:00 p.m. in Courtroom 705, 40 Centre Street.

It is **SO ORDERED**.

garding potential claims and to notify the Florida Secretary of State of its proper address in a timely fashion. *See* Field Aff. at ¶ 20; Corporate Record at 1.