Beth LURIE and Mark Lurie, Plaintiffs,

v.

**NORWEGIAN CRUISE LINES, LTD. and M/V Norwegian Star, Defendants.**

**No. 03 Civ. 5033(PKL).**

United States District Court, S.D. New York.

Feb. 26, 2004.

Barry R. Fertel, Goetz Fitzpatrick LLP, New York City, for Plaintiffs Beth Lurie and Mark Lurie.

Peter A. Junge, Armand P. Mele, Lambos & Junge, New York City, for Defendant Norwegian Cruise Lines, Ltd.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiffs Beth and Mark Lurie, residents of New York, brought this action under the Court's diversity jurisdiction seeking damages for unlawful imprisonment and breach of contract. Plaintiffs' claims arise from their alleged mistreatment at the hands of defendant Norwegian Cruise Lines, Ltd. ("NCL"), a Florida corporation with its principle place of business in Miami, Florida, while on board NCL's cruise ship, Norwegian Star. NCL now moves to dismiss this case based on a forum selection clause contained in the passenger ticket contract issued to plaintiffs for their cruise that requires claims against NCL to be brought in Dade County, Florida. Plaintiffs oppose this motion and, as an alternative to dismissal, request that the Court transfer the action to the United States District Court for the Southern District of Florida. For the reasons stated below, the Court finds that the forum selection clause is valid and enforceable and orders transfer rather than dismissal.

### I. Background

This case arises from a series of unfortunate incidents that occurred aboard NCL's passenger cruise ship, Norwegian Star, in late February 2003. On or about January 23, 2003, plaintiffs, Beth Lurie and her husband Mark Lurie, purchased tickets for a week-long Hawaiian cruise aboard this ship, scheduled to depart on February 23, 2003 from Honolulu, Hawaii. Defendants arranged for this cruise through Cruise Value Center, a discount travel agency located in East Brunswick, New Jersey. On or about February 21, plaintiffs flew from New York to Honolulu and, after spending two nights in a hotel, boarded the Norwegian Star on February 23. Trouble surfaced, however, on February 28, when the ship docked in Maui, Hawaii. The Luries claim they were forcefully prevented from disembarking with the rest of the passengers at Maui and unlawfully detained in a locked room, incommunicado,

by defendants. Plaintiffs further allege that later that day, subsequent to their detention, they were ejected from the cruise by NCL and forbidden from returning to the ship, in breach of NCL's contractual obligation to provide a seven-day luxury cruise.

While the bare allegations regarding the events of February 28 are certainly unusual, the circumstances surrounding those events are even more intriguing. As it turns out, Beth Lurie is a paralegal in the bankruptcy department of Jenkins & Gilchrist Parker Chapin LLP, a law firm representing certain employees of NCL in a class action against NCL pending in this District. That class action involves claims by the employees that they were not paid overtime and other wages required by law. According to Ms. Lurie, she had only a general knowledge of that lawsuit before embarking on the cruise, similar to what one could glean from reading a legal newspaper. At some point during the cruise, however, she received an email from a partner at Jenkins & Gilchrist asking that she investigate the suspicious number of opt out forms submitted by crew members aboard the Norwegian Star. At that point, she apparently questioned three crew members about whether they were being improperly influenced to opt-out of the class action. According to Ms. Lurie, "the reason we were forcibly ejected from the ship and held incommunicado for hours was to terrorize us, and prevent anyone from learning how Norwegian was not only mistreating its employees, but how it interfered with their right to participate in a pending class action before this Court." (Lurie Decl. ¶ 4.)

NCL, not surprisingly, offers a different account, suggesting that Ms. Lurie planned all along to use the trip for the purpose of investigating the treatment of employees on the Norwegian Star. NCL claims that both Ms. Lurie and her husband were observed interviewing crew members who were not plaintiffs in the pending class action. According to NCL, the Luries "were openly asking those crew members about their work conditions, to wit: if they were receiving fair treatment, if they were being given time sheets, and if they were sure [that] they wanted to be excluded from the ... class action." (Kilgour Decl. at ¶ 7.) NCL claims that if the Luries were, in fact, detained and then removed from the ship, "the vessel's Master took reasonable action within his authority to deter and prevent plaintiffs from both continuing to disrupt the efficient operation of the vessel and undermining the maintenance of order and discipline of the crew at sea." (Def. Mem. at 3.)

At this stage of the litigation, however, the Court need not determine which party has presented a more accurate version of what took place aboard the Norwegian Star. While these events are sure to be hotly litigated at the merits stage, the Court's focus here is on the limited issue of whether to enforce the forum selection clause contained in the Luries' passenger ticket contract. That clause states as follows:

> This Contract shall be governed in all respects by the laws of the State of Florida and the laws of the United States of America. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.

(Kilgour Decl., Ex. A; Lurie Decl., Ex. A.) Relying on this clause, NCL moves to dismiss this action as being filed in an improper forum. Plaintiffs, on the other hand, argue that the clause is unenforcea-

ble because they were not given adequate notice of the terms of the contract and did not have a reasonable opportunity to reject the contract without penalty. Plaintiffs further argue that the terms of the forum selection clause should not apply here because NCL's conduct was deliberate and because plaintiffs' claim for false imprisonment does not arise out of the terms of the contract between the parties. Finally, plaintiffs argue that should the Court decide to enforce the forum selection clause, the appropriate remedy would be to transfer the case to the Southern District of Florida in the interests of justice. The Court finds that because the plaintiffs had reasonable notice of the forum selection clause, and because the clause does not violate principles of fundamental fairness, the forum selection provision is valid and enforceable as to the plaintiffs. Rather than dismissing the action, however, the Court finds that the appropriate remedy here is to transfer the action to the United States District Court for the Southern District of Florida.

## II. Discussion

 As an initial matter, a passenger ticket contract is a maritime contract and therefore governed by the general maritime law of the United States. *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *The Moses Taylor,* 4 Wall. 411, 71 U.S. 411, 427, 18 L.Ed. 397 (1867); *Vavoules v. Kloster Cruise Ltd.,* 822 F.Supp. 979, 982 (E.D.N.Y.1993) (Weinstein, J.) (compiling cases). The fact that plaintiffs have invoked the Court's diversity jurisdiction in their complaint does not change the analysis; regardless of the choice of forum or basis of subject matter jurisdiction, disputes relating to maritime contracts and injuries sustained aboard a ship are governed by federal maritime law. *See, e.g., Melnik v. Cunard Line Ltd.,* 875

F.Supp. 103, 106 (N.D.N.Y.1994); *Vavoules,* 822 F.Supp. at 982–83.

NCL brings its motion to dismiss "pursuant to Fed.R.Civ.P. 12(b) and 12(c), and case law." (Def.'s Mem. at 1.) This studious circumspection is not the result of a lack of research, however, as the proper procedural mechanism for requesting dismissal based on a forum selection clause is an open question in the Second Circuit. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 28–29 (2d Cir.1997); *Glyphics Media, Inc. v. M.V. CONTI SINGAPORE,* 2003 WL 1484145 at *3 (S.D.N.Y.2003). The difficulty with this question arises from the fact that a forum selection clause cannot oust a federal court of personal or subject matter jurisdiction or render venue improper. Nor can it accurately be said to nullify a plaintiff's valid substantive claim. As a result, there is no consensus among the circuits or within the Second Circuit on the proper procedure for enforcing such provisions. *Id.* at 28 (citing the varying procedural devices employed by different courts to enforce forum selection clauses, including Rule 12(b)(1), 12(b)(3), and 12(b)(6)). Indeed, "there is no easy answer to the enforcement procedure question because there is no existing mechanism with which forum selection enforcement is a perfect fit." *Id.* at 29 (citing Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts after* Carnival Cruise*: A Proposal for Congressional Reform,* 67 Wash. L.Rev. 55 (1992)).

 While the Second Circuit has declined to adopt a particular procedural device under the Federal Rules of Civil Procedure for seeking dismissal based on a forum selection clause, it is clear that a district court has the authority to order such a dismissal. This authority is rooted in the Court's inherent authority to "decline jurisdiction" as a means of enforcing

a valid forum selection clause in a contract. *See New Moon,* 121 F.3d at 28; *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.,* 198 F.R.D. 402, 405 (S.D.N.Y. 2001); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.,* 131 F.Supp.2d 393, 407–08 (S.D.N.Y.2000); *see also,* Graydon S. Sterling, *Forgotten Equity: The Enforcement of Forum Clauses,* 30 J. Mar. L. & Com. 405 (1999) (advocating enforcement of forum selection clauses through the equitable remedy of specific performance). If it determines that the forum selection clause is valid and enforceable, however, the Court is not limited to dismissal as a remedy. A district court may elect to transfer an action to a forum permitted by the applicable clause rather than dismiss the case whether such transfer is moved by the defendant, *Carron v. Holland America Line–Westours Inc.,* 51 F.Supp.2d 322, 326 (E.D.N.Y.1999), the plaintiff, *Pomer v. Kloster Cruise Ltd.,* 1994 WL 774503 at *2 (W.D.Wash.1994), or, after giving the parties an opportunity to be heard, *sua sponte* by the court, *Licensed Practical Nurses,* 131 F.Supp.2d at 406–07.

■ Because forum selection clauses in maritime contracts are presumably valid, the burden is on the plaintiff who files suit outside the contractually designated forum to overcome this presumption. *New Moon,* 121 F.3d at 29 (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). "This burden is analogous ... to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *Id.* Where, as here, a motion to enforce the clause is filed at the initial stage of litigation, the Court views the facts in the light most favorable to the plaintiff. *Id.; Carron,* 51 F.Supp.2d at

325. The Court is not limited to the pleadings in making its determination and may consider the parties' supporting affidavits and declarations; however, a disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing. *New Moon,* 121 F.3d at 29; *Carron,* 51 F.Supp.2d at 325; *see also* Fed. R. Civ. Pro. 12(d).

The actual passenger ticket contract at issue in this case consists of a top section, known as the "Cruise Ticket," which is perforated so that it can be removed from the rest of the passenger ticket contract upon boarding, and the "Contract of Passage," which contains 28 numbered paragraphs, including the forum selection clause. NCL issued a single passenger ticket contract for Mark and Beth Lurie, so that both passengers were traveling on the same ticket. Both the Cruise Ticket and Contract of Passage portions of the passenger ticket contract contain prominent notices alerting the passenger to the terms of the Contract of Passage. (Kilgour Decl. ¶¶ 12–17; Exs. A–B.) In support of their motion, defendants submitted a declaration by Jane E. Kilgour, the manager of the NCL's Passenger & Crew Claims Department, stating that the Luries' passenger ticket contract was issued on January 24, 2003 in Miami, Florida and mailed shortly thereafter to the Luries' travel agent. (Kilgour Decl. ¶ 8.)

In response, plaintiffs submitted a declaration by Beth Lurie stating that she had no recollection of receiving the passenger ticket contract until after she arrived in Honolulu just prior to boarding the Norwegian Star. (Lurie Decl. ¶ 2.) Ms. Lurie further states that she "was informed that once we purchased our cruise tickets, they were non-refundable." (*Id.*) NCL countered this declaration with declarations by Kelly McIntyre, the operations manager at Cruise Value Center, and Marilyn David,

the travel agent at Cruise Value Center who contacted NCL for reservations and tickets on behalf of the Luries. Both Ms. McIntyre and Ms. David state that Cruise Value Center received the Luries' passenger ticket contract via mail from NCL on January 28, 2003. (McIntyre Decl. ¶ 3; David Decl. ¶ 3.) Ms. McIntyre and Ms. David further state that on February 6, 2003 the Luries' passenger ticket contract was sent by Cruise Value Center via Air Bourne Express to Ms. Lurie at Jenkins & Gilchrist, although it was addressed to "Beth Friedman," which, as it turns out, is Ms. Lurie's maiden name and the name she uses professionally. (McIntyre Decl. ¶ 4; David Decl. ¶ 4; February 11, 2004 Hr'g Tr. at 47 (hereinafter "Tr.").) Annexed to both Ms. McIntyre's and Ms David's declarations is a copy of an Air Bourne Express delivery confirmation, indicating that the "cruise tickets" were delivered to Jenkins & Gilchrist on February 10, 2003 and received by "J: Phillips" at 8:56 a.m. NCL also submitted a supplemental declaration by Ms. Kilgour stating that NCL has a long-standing policy of providing full refunds to passengers who object to the terms of the Contract of Passage. (Supp. Kilgour Decl. ¶ 3.)

Because of the conflicting submissions of the parties regarding the Luries' receipt of the passenger ticket contract and Ms. Lurie's claim that she was told the ticket was non-refundable, the Court scheduled an evidentiary hearing on February 11, 2004. At that hearing, Ms. Lurie testified that Jermaine Phillips is a mail room employee of Jenkins & Gilchrist and that she did, in fact, receive an envelope with cruise related documents from Air Bourne Express on February 10, 2003. She testified, however, that she did not remember whether that envelope contained the passenger ticket contract. (Tr. at 14–15, 26–27.) Instead, she testified that to the best of her recollection she first saw the passenger ticket

contract just prior to boarding the cruise. (*Id.* at 15–16.) With regard to her claim that the ticket was non-refundable, Ms. Lurie testified that Ms. David recommended that she purchase travel insurance for the trip because the fare was non-refundable once she booked the cruise and that she did, in fact, purchase this insurance. (*Id.* at 14.) She further testified that she was never informed of NCL's policy of providing a full refund to any passenger who cancels their cruise because of an objection to the terms of the Contract of Passage. (*Id.* at 20–21.)

At the same hearing, NCL called Ms. David as a witness and produced the file she kept regarding the booking of the Luries' cruise. Both Ms. David's testimony and the contents of the file, which was received in evidence, (February 11, 2004 Hr'g, Def.'s Ex. C), support NCL's contention that the Passenger Ticket Contract was sent by NCL to Cruise Value Center in late January and thereafter sent by Cruise Value Center via Air Bourne Express to Ms. Lurie (under the name Beth Friedman) at Jenkins & Gilchrist on February 6, 2004. (Tr. at 47–52, 54–57.) Furthermore, Ms. David testified that nothing in the file indicated that the passenger ticket contract was sent by NCL to Hawaii or that the Luries expressed any concern prior to traveling to Hawaii about not having tickets for the cruise, although she would expect such circumstances to be noted in the file if they had, in fact, occurred. (*Id.* at 60, 67–68.) Ms. David also testified that she did not recall whether she told Ms. Lurie that her ticket was non-refundable. (*Id.* at 60.) She did recall, however, selling Ms. Lurie travel insurance and explaining the coverage offered by the insurance. (*Id.*) She testified that Cruise Value Center offers this insurance in case a trip must be cancelled due to "[i]llness, injury, death, loss of job, layoff of job, [or] jury

duty," because cruise lines, such as NCL, typically will not give a full refund under these circumstances. (*Id.* at 61–62.) Ms. David indicated that her understanding of NCL's refund policy was that if a passenger decided not to take a cruise between 8 and 45 days before the cruise date, NCL would only refund one half the ticket price and that she was unaware of NCL's policy of granting full refunds to passengers who object to the terms of the passenger ticket contract. (*Id.* at 64–65.) Pressed on whether she had ever heard of such a policy, she responded, "No client ever asked me that question." (*Id.* at 65.)

An analysis of the validity and enforceability of a forum selection clause in a maritime contract begins and, to a significant degree, ends with the Supreme Court's foundational decisions *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In *M/S Bremen*, the Court, addressing a forum selection clause in a freely negotiated maritime contract, held that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." 407 U.S. at 10, 92 S.Ct. 1907 (internal quotations omitted). Thus, under *M/S Bremen* forum selection clauses are enforceable absent a "clear show[ing] that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching [or unless] enforcement would contravene a strong public policy of the forum in which suit is brought whether declared by statute or judicial decision." *Id.* at 15, 92 S.Ct. 1907.

The Court extended its holding in *M/S Bremen* to non-negotiated forum selection clauses in cruise line passenger ticket contracts in *Shute*, finding that such clauses were not *per se* unreasonable. 499 U.S. at 593, 111 S.Ct. 1522. *Shute* nevertheless made clear that forum selection clauses in form passage contracts must be "reasonably communicated" by the carrier to cruise line passengers and that such clauses are subject to judicial scrutiny for reasonableness and fundamental fairness. *Id.* at 590, 593–95, 111 S.Ct. 1522. In determining that the forum selection clause at issue was reasonable, the Court relied on the following factors: 1) cruise lines, because of the nature of their business, have a special interest in limiting the fora in which they are subject to suit; 2) the clause established the proper forum for suits arising from the contract, thus reducing the expenses of all parties and conserving judicial resources in subsequent litigation; 3) savings to the cruise line resulting from limiting the fora in which it may be sued would likely benefit passengers in the form of reduced fares; and 4) the forum selection clause, which required plaintiffs, residents of Washington State, to litigate their claim in Florida, was not unreasonably inconvenient. *Id.* at 593–95, 111 S.Ct. 1522. Under the rubric of fundamental fairness the Court noted that Carnival had its principle place of business in Florida and that many of its cruises departed from Florida, making it unlikely that the clause was motivated by bad faith on the part of the cruise line; that there was no evidence of fraud or overreaching in obtaining the Shutes' accession to the forum clause; and that the Shutes "presumably retained the option of rejecting the contract with impunity." *Id.* at 595, 111 S.Ct. 1522.

The Second Circuit has adopted a two-part test for determining whether a sea carrier has reasonably communicated the existence and importance of a contractual limitation to a passenger. *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523–24

(2d Cir.2001) (Walker, C.J.). This test turns on "(1) whether the physical characteristics of the ticket itself reasonably communicated to the passenger the existence therein of important terms and conditions that affected the passenger's legal rights, and (2) whether the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract permitted the passenger to become meaningfully informed of the contractual terms at stake." *Id.* at 523 (internal quotations omitted). Here, the prominent warnings on the Luries' passenger ticket contract drawing the passenger's attention to the importance of the contract terms and the uncomplicated layout of the Contract of Passage clearly meet the first part of this test, *cf. Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44 (2d Cir.1990) (approving a similar form passenger ticket contract), and, in fact, plaintiffs do not contest this point.

■ As to the second part of the test, the clear weight of the evidence shows that NCL issued the Luries' passenger ticket contract on January 24, 2004 and subsequently mailed it to the Luries' travel agent, Cruise Value Center.[1] The evidence further establishes that Cruise Value Center received the ticket contract on January 28, 2003 and sent it via Air Bourne Express to Ms. Lurie at her place of employment, Jenkins & Gilchrist, and that Ms. Lurie received the passenger ticket on February 10, 2003 almost two full weeks prior to the cruise. Ms. Luries' statements that she does not recall receiving or reviewing the passenger ticket contract prior to arriving at the dock in Hawaii are unconvincing and insufficient to overcome the other testimony and evidence presented in connection with this motion. It is clear that NCL took reasonable steps to get the passenger ticket contract to Ms. Lurie well in advance of the cruise. Accordingly, the Luries had ample opportunity and incentive to review the provisions of the contract and any failure to do so on their part does not relieve them of the limitations therein. *Compare Foster v. Cunard White Star,* 121 F.2d 12, 13 (2d Cir.1941) ("Plaintiff is charged with notice of the [contractual] limitation, since her brother, who purchased the ticket for her … had it in his possession for some 17 days before the voyage commenced."), *and Ames,* 1998 WL 427694 at *5 (finding that plaintiffs had reasonable notice of the terms of their ticket contract where they received their tickets only two or three days prior to departure), *and Colby v. Norwegian Cruise Lines, Inc.,* 921 F.Supp. 86, 88 (D.Conn.1996) (plaintiffs deemed to have notice of contract terms where they had possession of the ticket only "for a period of time"), *with Ward,* 273 F.3d at 526 (no reasonable notice of contractual terms where passenger is given ticket that is collected two to three *minutes* later and where no copy of contractual terms is retained by passenger). *See also Gomez v. Royal Caribbean Cruise Lines,* 964 F.Supp. 47, 50 (D.P.R.1997) ("The courts have also held that notice of important conditions of a passage contract can be imputed to a passenger who has not personally received the ticket or possession thereof. The ticket may be received by passengers themselves or by their travel

---

1. Plaintiffs suggest in their reply brief and their complaint that Cruise Value Center was not their agent, but rather was acting as NCL's agent. "It is settled law that travel agents are to be construed as agents of ticket purchaser, and passengers are accordingly charged with constructive knowledge of ticket terms and conditions while the tickets are in their agent's possession." *Ames v. Celebrity Cruises, Inc.,* 1998 WL 427694 at *5 n. 10 (S.D.N.Y.1998). Plaintiffs have not presented to the Court any circumstances that would exempt their relationship with Cruise Value Center from this principle.

agent.''); *Melnik v. Cunard Line Ltd.*, 875 F.Supp. 103, 107 (N.D.N.Y.1994) ("[F]ailure to read a ticket will not relieve a passenger of the contractual limitation.") (citing *Vavoules v. Kloster Cruise Ltd.*, 822 F.Supp. 979, 981 (E.D.N.Y.1993)).

The forum selection clause at issue here also withstands the reasonableness and fairness analysis established by *M/S Bremen* and *Shute*. NCL is a large cruise line with its principle place of business and corporate headquarters in Miami, Florida. Thus, the factors addressed by the Court in *Shute* in determining that the forum selection clause there was reasonable are equally applicable to the clause in NCL's form contract. Furthermore, plaintiffs have not made the strong showing of inconvenience necessary to avoid enforcement of the clause; nor is there evidence that NCL included the clause in the passenger ticket contract in bad faith or through fraud or overreaching.

Plaintiffs attempt to distinguish *Shute* on the grounds that their ticket was non-refundable when they purchased it so that they did not have "the option of rejecting the contract with impunity." *Shute*, 499 U.S. at 595, 111 S.Ct. 1522. A minority of district courts and, indeed, the dissenting justices in *Shute*, have adopted a similar position, finding that, where a cruise line sells non-refundable tickets or charges a substantial fee for passengers who cancel their cruises, forum selection clauses in passenger ticket contracts that are sent to passengers after purchase are fundamentally unfair. *See, e.g., Shute*, 499 U.S. at 597, 111 S.Ct. 1522 (Stevens, J., dissenting); *Schaff v. Sun Line Cruises, Inc.*, 999 F.Supp. 924, 927 (S.D.Tex.1998); *Corna v. American Hawaii Cruises, Inc.*, 794 F.Supp. 1005, 1011–12 (D.Haw.1992). This argument, however, has been rejected by the majority of courts that have addressed it. *See, e.g., Ferketich v. Carnival Cruise Lines*, 2002 WL 31371977 at *4–5 (E.D.Pa. 2002) ("Although [plaintiff] would be subject to a $350 cancellation fee, in light of the fact that the majority of courts have rejected the argument [plaintiff] presents, [the forum selection clause is enforceable.]"); *Ames v. Celebrity Cruises, Inc.*, 1998 WL 427694 at *5 n. 11 (S.D.N.Y.1998) ("This argument is unpersuasive in that passengers who are given time to review their tickets are typically prevented from later escaping their obligations because of a cancellation policy that they failed to challenge at the time."); *Natale v. Regency Maritime Corp.*, 1995 WL 117611 at *3 (S.D.N.Y.1995).

In his *Shute* dissent, Justice Stevens pointed out the harshness of the majority's decision, noting that the Shutes did not have an opportunity to review the forum selection clause until after they had paid for their ticket. 499 U.S. at 597, 111 S.Ct. 1522. Furthermore, the Shutes' passenger ticket contract provided that "the Carrier shall not be liable to make any refund to passengers in respect of ... tickets wholly or partly not used by a passenger." *Id.* In light of this clause, Justice Stevens recognized that it was unlikely that a passenger who actually read and objected to the forum selection clause would understand that he or she retained the opportunity to reject the terms of the passenger ticket contract without penalty. *Id.* It is clear, however, that in the majority's view, these circumstances were insufficient to rebut the presumption that the Shute's did, in fact, have such an opportunity. *Id.* at 595, 111 S.Ct. 1522.

The refund provision in the Luries' passenger ticket contract is substantially the same as that addressed in *Shute*. It states, in relevant part, "The fare paid hereunder ... shall be considered fully earned at the time of payment.... Carrier shall not be liable to make any refund to

passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger...." (Kilgour Decl. Ex. A.) Under *Shute*, and on its face, this clause does not preclude a passenger from rejecting the terms of the passenger ticket contract without penalty. Moreover, the extrinsic evidence submitted in connection with this motion is not inconsistent with this interpretation. Ms. David testified that she sold travel insurance to Ms. Lurie that insured against the possibility that the Luries might have to cancel their cruise for a variety of reasons for which cruise lines, such as NCL, would not grant a full refund. There is no indication, however, that she told the Luries that they could not reject the terms of their contract without penalty. More importantly, there is no indication that NCL made any additional representation to the Luries prior to their receipt of the ticket that would tend to rebut the presumption that the Luries were free to reject the terms of the passenger ticket contract with impunity.

Clearly *Shute* sets the bar extremely high for plaintiffs seeking to avoid enforcement of a forum selection clause based on a cruise line's policy of selling non-refundable tickets. Even so, there are circumstances where such policies, consistent with *Shute*, will effectively bar passengers from rejecting the terms of a passenger ticket contract without penalty and thus render a forum selection clause fundamentally unfair. For example, where a cruise line's passenger ticket contract received after payment unequivocally states that money paid to the carrier will not be returned to the passenger under any circumstances, it is unreasonable, even under *Shute*, to impute acceptance of the forum selection clause by the passenger. *See McTigue v. Regal Cruises*, 1998 WL 191430 at *2 (S.D.N.Y.1998) (declining to enforce forum selection clause where passenger ticket contract stated that the carrier was entitled to retain the ticket price "under all circumstances"). Absent such exceptional circumstances, however, *Shute* mandates that forum selection clauses in passenger ticket contracts be enforced.[2]

Plaintiffs also argue that the forum selection clause should not be enforced on the grounds of public policy. They argue that enforcing the clause would be inappropriate because they are seeking to vindicate their "important right not to be unlawfully imprisoned or incarcerated against their will" and because NCL's actions were motivated by a desire to inter-

2. *Shute* and its underlying *laissez faire* attitude toward contracts of adhesion certainly has been the subject of extensive criticism by courts and commentators for, among other things, the weak protection it affords cruise passengers, its facile economic analysis regarding the burdens and benefits of forum selection clauses and the fact that the ordinary passenger is unlikely to be aware of his or her right to reject the terms of the ticket contract. *See, e.g., Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir.1995) (Calabresi, J, concurring) ("A preliminary analysis leads me to think that upholding forum-selection clauses like the one at involved in this case makes very little economic sense."); *Vavoules v. Kloster Cruise Ltd.*, 822 F.Supp. 979, 983 (E.D.N.Y.1993) (Weinstein, J.) ("[The cruise] industry has now become a mass consumer industry utilized by millions of laypersons. Congress and the courts might well consider whether we should apply arguably outmoded admiralty concepts in this field."); *see generally*, Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts after* Carnival Cruise: *A Proposal for Congressional Reform*, 67 Wash. L.Rev. 55 (1992); Jean Braucher, *The Afterlife of Contract*, 90 Nw. U.L.Rev. 49 (1995); Charles L. Knapp, *Taking Contracts Private: The Quiet Revolution in Contract Law*, 71 Fordham L.Rev. 761 (2002). However, neither Congress nor the Supreme Court has overruled *Shute* and, given the substantial similarity of the circumstances in this case to those in *Shute*, this Court is constrained to find that the forum selection clause in the Luries' passenger ticket contract is fundamentally fair and reasonable.

fere with the class action lawsuit pending in this District. (Plaintiff's Opp. Mem. at 12.). As noted above, a choice-of-forum clause "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. 1907.

In support of their argument, plaintiffs cite *Walker v. Carnival Cruise Lines,* 107 F.Supp.2d 1135 (2000). In that case, severely disabled plaintiffs sued the defendant cruise line under the Americans with Disabilities Act of 1990. Plaintiffs, who had been assured that their cruise and cabins would be disabled accessible, allegedly suffered injuries, indignities and a wholly disappointing voyage due to the ship's inaccessibility. *Walker,* 107 F.Supp.2d at 1136–37. Defendants sought to dismiss the case in light of a forum selection clause in the plaintiffs' passenger ticket contracts designating Florida as the exclusive forum for all suits against the cruise line. On reconsideration of its earlier order dismissing the case, however, the court declined to enforce the forum selection clause based on compelling evidence of the physical and financial hardships that would face plaintiffs if they were required to litigate their claims in Florida and the "strong national policy of eradicating disability discrimination and promoting full and equal access to the legal system for civil rights plaintiffs" enshrined in the Americans with Disabilities Act. *Id.* at 1139–45; *see also id.* at 1143 ("[P]lantiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of private attorneys general who seek to vindicate a policy of the highest priority.") (internal quotations omitted). The court reasoned that "[e]nforcing the forum selection clause here would actually serve to undermine society's strong interest in rooting out discrimination and ensuring that the disabled members of our society may equally partake in social intercourse, because to do so would erode a clearly enunciated federal policy of the highest order." *Id.* at 1145; *cf. Red Bull Assoc. v. Best Western,* 862 F.2d 963, 966–67 (2d Cir.1988) (upholding district court's refusal to transfer case to forum mandated by forum selection clause where transfer would have frustrated the purposes of the Civil Rights Acts of 1867, 1964, and 1968). Plaintiffs in this case, however, do not cite to any correspondingly strong public policy endorsed by statute or judicial decision that would apply to their claims and the Court is not inclined to fashion one for them. Plaintiffs are clearly not in the position of "private attorneys general" in this case and their attempt to wrap themselves in the flag of our nation's civil rights laws is well off the mark.

■ Finally, plaintiffs argue that their claim for false imprisonment is independent of the passenger ticket contract and therefore not subject to the forum selection clause. This argument fails for two reasons. First, it is well settled that forum selection clauses may encompass claims beyond breach of the contract containing the clause, including tort claims. *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360–61 (2d Cir.1993); *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,* 2000 WL 1277597 at \*5 (S.D.N.Y.2000); *Albany Ins. Co. v. Banco Mexicano, S.A.,* 1998 WL 730337 at \*5 (S.D.N.Y.1998). Thus, the scope of a forum selection clause depends on the language of the clause itself. *Roby,* 996 F.2d at 1361; *Direct Mail Prod. Servs.,* 2000 WL 1277597 at \*5. The language of the choice-of-forum clause here is quite broad: by its terms, governing "any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder . . . ."

The Luries' alleged detention occurred while they were passengers on defendant's cruise ship during the course of the voyage governed by the passenger ticket contract. The Luries' false imprisonment claim, therefore, clearly arose in connection with the transportation furnished by NCL. *Cf. Roby* 996 F.2d at 1359–61 (finding that plaintiffs' securities law and RICO claims against Lloyd's governing bodies were clearly governed by forum selection clause that covered "any dispute and/or controversy of whatsoever nature arising out of or relating to [plaintiffs] membership of, and/or underwriting of insurance at, Lloyd's").

■ Furthermore, even if the forum selection clause were less inclusive and only referred to claims arising from the passenger ticket contract, it would still govern tort claims that "depend on rights and duties that must be analyzed by reference to the contractual relationship." *Direct Mail Prod. Servs.*, 2000 WL 1277597 at *6. If plaintiffs were actually detained as they claim, the merits of their false imprisonment claim will depend on the extent and applicability of NCL's authority as a carrier to take action to maintain order on its ships. This authority must be analyzed by reference to the parties' relationship as carrier and passenger under the passenger ticket contract. In particular, the extent and applicability of this authority will depend on the interpretation of clause 14 of the Contract of Passage, which reads "Carrier reserves the right to refuse or revoke passage to persons who in the Carrier's sole judgment ... may endanger themselves or others or be or become obnoxious to others."[3]

■ Because the Court finds that the forum selection clause is valid and enforceable and that it governs plaintiffs' claims, the sole remaining question is the appropriate means of enforcement. As discussed above, the Court has the authority to either dismiss the case pursuant to its inherent power to decline jurisdiction or transfer the case to the district mandated by the clause. Where, as here, venue is proper in the district where the action is originally filed, the correct transfer statute to apply in enforcing a forum selection clause is 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." *See GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 409 (S.D.N.Y.2001); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 404–405 (S.D.N.Y.2000); *Smith v. Commodore Cruise Line Ltd.*, 124 F.Supp.2d 150, 156 n. 8 (S.D.N.Y.2000).[4] Defendant's argue, however, that dismissal is the appropriate means to enforce the clause in this case because 1) dismissal better preserves the contractual intent of the parties and 2) transfer would not be in the interests of justice because plaintiffs were clearly aware, or should have been aware, of the clause when they filed suit and because Ms. Lurie appears to have tailored her testimony to accommodate her legal arguments.

It is true that where a forum selection clause, such as the one at issue here, per-

---

3. Other provisions of the passenger ticket contract may be relevant as well. For instance, clauses 12 and 13 purport to limit claims for personal injury, which would seem to encompass tort claims such as the one at issue here.

4. Defendants concede that venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a). (Def.'s Evidentiary Hr'g Brief at 3.)

mits the plaintiff to bring suit in either state or federal court, dismissal is often more appropriate to preserve plaintiff's contractual right to file suit in either jurisdiction. *See GMAC Commercial Credit,* 198 F.R.D. at 409; *Licensed Practical Nurses,* 131 F.Supp.2d at 407. In contrast, where, as here, the plaintiff requests transfer to a federal court that is permissible under the forum selection clause and renounces any intention to file an action in state court, this consideration does not apply. Furthermore, although the passenger ticket contract does not establish a right to have cases transferred to the Southern District of Florida, such a remedy is clearly authorized by 28 U.S.C. 1404(a). *Licensed Practical Nurses,* 131 F.Supp.2d at 407. Accordingly, the appropriate question under the circumstances is whether transfer, rather than dismissal, is in the interest of justice.

Defendant's arguments in favor of dismissal do not sway the Court. Although plaintiffs clearly were in possession of the passenger ticket contract when they filed their claim, given the unusual circumstances of this case, the fact-specific inquiry required under *Shute,* and the willingness of certain courts to erode *Shute's* holding, they were entitled to test the validity of the forum selection clause. As for Ms. Lurie's lack of recollection regarding her receipt of the passenger ticket contract, the Court is not convinced that her testimony was in bad faith or that this consideration would warrant dismissal. The purpose of section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). As there is no compelling reason to dismiss this action and thereby require the parties to start over from the beginning in the Southern District of Florida, the interests of efficiency and judicial economy justify transfer as the appropriate means of enforcing the forum selection clause.[5]

### III. Conclusion

For the foregoing reasons, the forum selection clause in plaintiffs' passenger ticket contract is valid and enforceable. Under the circumstances, transfer of the action under 28 U.S.C. § 1404(a) is preferable to dismissal. The motion for dismissal is therefore denied, and it is hereby ORDERED that this action be transferred to the United States District Court for the Southern District of Florida.

**SO ORDERED.**

---

5. In response to a footnote in plaintiffs opposition papers, NCL asserts in its reply papers that defendant M/V Norwegian Star is not subject to the *in rem* jurisdiction of this Court. This question is not properly before the Court and the Court does not address it, other than to note that a district court may order the transfer of an action even if it lacks jurisdiction over a defendant. *See Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978); *Standing Stone Media, Inc. v. Indiancountrytoday.com,* 193 F.Supp.2d 528, 536 (N.D.N.Y.2002).